UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

AMERICAN HOME ASSURANCE COMPANY and THE CONTINENTAL INSURANCE COMPANY,

Plaintiffs,

v.

TIG INSURANCE COMPANY,

Defendant.

Case No.: 26-cv-02980-AJB-JAC

**ORDER GRANTING DEFENDANT TIG INSURANCE COMPANY'S MOTION TO TRANSFER VENUE**

**(Doc. No. 14)**

Before the Court is Defendant TIG Insurance Company's ("TIG") motion to transfer venue to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a). (Doc. No. 14.) Plaintiffs American Home Assurance Company ("American Home") and The Continental Insurance Company ("Continental") (collectively, "Plaintiffs") oppose. (Doc. No. 18.) The Court finds the motion suitable for determination on the papers. *See* CivLR 7.1.d.1. For the reasons stated below, the Court **GRANTS** TIG's motion and **TRANSFERS** the instant action to the Northern District of Ohio.

## I. BACKGROUND

In the 1970s and 1980s, American Home, Continental, and predecessors of TIG were among insurers that issued general liability coverage to White Consolidated Industries, Inc. ("WCI") (Doc. Nos. 14 at 7; 18 at 8.) WCI was a Fortune 500 conglomerate headquartered

in Cleveland, Ohio. (Doc. No. 14 at 8.) For decades, WCI has defended thousands of lawsuits by plaintiffs seeking damages for bodily injury alleged to have arisen from exposure to asbestos or asbestos-containing products manufactured, distributed, or sold by WCI or its predecessors.[1] (Doc. No. 14 at 8.) These claims (the "Underlying Claims") are brought against WCI, Electrolux, Rentavla, and a number of former affiliated companies ("the Insureds") who had operations around the country. (Doc. No. 18 at 8.)

TIG, American Home, and Continental, among other insurers, have reimbursed defense and indemnity costs in connection with the Underlying Claims on behalf of the Insureds. (Doc. Nos. 18 at 9; 14 at 8–9.) In late 2024, TIG entered into a settlement agreement with WCI, under which TIG paid certain sums to WCI in exchange for a full release of all past, present and future claims arising under its WCI policies. (Doc. No. 14 at 9; *see also* Doc. No. 18 at 9 ("TIG participated in reimbursing the Insureds' defense and indemnity costs until it entered into a settlement agreement with the Insureds' alleged successor, Rentavla, in 2024.").) After that settlement, TIG stopped contributing to the payment of defense and indemnity costs for the Underlying Claims, and Rentavla started tendering claims to Plaintiffs on an "all sums" basis. (Doc. Nos. 18 at 9; 14 at 9–10.) Plaintiffs assert they were forced to pay more than their equitable share of defense and indemnity costs, including substantial amounts in place of TIG. (Doc. No. 18 at 9.)

In 2024, Rentavla initiated an insurance coverage action in Ohio state court (the "2024 Ohio Coverage Action"), in which American Home and Continental are defendants and a jury trial is set for October 2027. (Doc. No. 14 at 9.) Under the auspices of the 2024 Ohio Coverage Action, Rentavla has tendered each settlement of underlying asbestos cases to a discrete triggered carrier allegedly consistent with its rights under Ohio law. (*Id.*)

---

[1] Electrolux Home Products, a U.S. division of Electrolux Group ("Electrolux"), acquired WCI in the 1980s. (Doc. No. 18 at 8.) Subsequently, in 2024, Eletrolux divested all its potential legacy asbestos exposure in the U.S. by selling Electrolux Home Products, which recently changed its name to Rentavla LLC ("Rentavla"). (*Id.*) In early 2025, Rentavla retained Premier Liability Management Solutions ("Premier") to manage claims for insurance coverage arising out of underlying asbestos claims and lawsuits. (*Id.*)

On May 12, 2026, Plaintiffs initiated the instant action against TIG, asserting two causes of action: (1) equitable contribution and (2) declaratory judgment. (Doc. No. 1, Complaint ("Compl.").) On May 18, 2026, TIG initiated a declaratory judgment against American Home and Continental in the Northern District of Ohio seeking a declaration concerning the same policies, parties, Underlying Claims, and obligations implicated here. (Doc. Nos. 14 at 10; 18 at 10.) On June 25, 2026, Plaintiffs filed a motion before the Court seeking to enjoin TIG's Ohio-based declaratory judgment action. (Doc. No. 10.) The next day, TIG filed the instant motion to transfer venue. (Doc. No. 14.) On July 7, 2026, American Home and Continental filed a motion to dismiss TIG's Ohio-based declaratory judgment action. (*See* Doc. No. 18 at 10.)

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case[, including] . . . (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation and internal quotation omitted).

///

///

## III. DISCUSSION

TIG argues the instant action should be transferred to the Northern District of Ohio because that district is a proper venue and the convenience factors favor transfer. (*See generally* Doc. No. 14.) Plaintiffs oppose the transfer on the grounds that no parties, witnesses, or documents are in Ohio. (*See generally* Doc. No. 18.)

### A. District Where the Action Might Have Been Brought

"First, the defendant must establish that the matter 'might have been brought' in the district to which transfer is sought." *Carey v. J.A.K.'s Puppies, Inc.*, 763 F. Supp. 3d 952, 969–70 (C.D. Cal. 2025). "This includes demonstrating that subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought." *Id.* at 970.

TIG asserts that the instant action could have been brought properly in the Northern District of Ohio. (Doc. No. 14 at 12.) American Home and Continental do not oppose these arguments. (*See generally* Doc. No. 18.)

As argued by TIG, the same diversity of jurisdiction would provide the Northern District of Ohio subject matter jurisdiction as is provided here. (Doc. No. 14 at 12.) Because "American Home and Continental admit that at all relevant times they have been licensed to do business in Ohio and that the insurance coverage in question was issued to an Ohio insured headquartered in Cleveland," (*id.*), the Northern District of Ohio would have personal jurisdiction over both. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Finally, for the same reason, venue would be proper in the Northan District of Ohio. *See* 28 U.S.C. § 1391(b)(2). Accordingly, the Northern District of Ohio is a district "where [this action] might have been brought."

### B. Convenience and Interest of Justice

The parties dispute whether the public and private factors considered in determining convenience and justice favor transfer. The Court addresses each factor raised by the parties.

///

**1. Local Interest and Home Law Forum**

First, a court may consider "public factors" including "the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

The parties vigorously disagree as to which state's law applies. TIG asserts that "American Home's and Continental's claim against TIG for equitable contribution springs from their insured's ('WCI's') invocation of its right under Ohio law 'to secure coverage from a single policy of its choice that covers "all sums" incurred as damages,' a right that WCI seeks to validate in the Ohio coverage action," "Ohio law governs TIG's settlement agreement with WCI," and "the Ohio state court coverage litigation will determine the scope of American Home's and Continental's obligations to WCI and the extent to which American Home and Continental are entitled to 'a setoff or credit for the value of settled coverage' that TIG issued to WCI." (Doc. No. 20 at 7.) Thus, "also at stake is Ohio's compelling interest in the 'prevention of litigation by compromise and settlement,' which American Home's and Continental's claims for equitable contribution against TIG would undermine by 'reduc[ing] drastically the incentives currently in place encouraging parties to settle.'" (*Id.* (quoting *OneBeacon American Ins. Co. v. American Motorists Ins. Co.*, 679 F.3d 456, 463 (6th Cir. 2012)).) In opposition, Plaintiffs (1) dispute the application of Ohio law to Plaintiffs' equitable contribution claim and TIG's view of the claim's merits, (2) argue that the transferee court would be required to apply California choice-of-law rules, and (3) assert that "federal courts routinely apply the law of other states." (Doc. No. 18 at 20.)

The question is not whether California choice-of-law rules will apply but, after application of the appropriate choice-of-law rules, whether the Court will determine it

should apply Ohio or California law to the rest of the action. "While the Court need not yet determine the applicable law, where there is a strong possibility that another state's law will apply[, as is true here,] this factor weighs weakly in favor of transfer." *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 764 (C.D. Cal. 2016) (cleaned up). Additionally, even if California substantive law is deemed to govern, the contacts of the action with Ohio through the implicated policies, the Insureds, ongoing litigation in Ohio state court, and the history of coverage actions in Ohio provide a more substantial interest in the Northern District of Ohio than here. *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1050 (N.D. Cal. 2001) ("The Northern District and the Central District both have some interest in this controversy. But since more of the events leading up to this dispute occurred in the Central District, the court concludes that the interest in that district is greater than the interest in this district."). Plaintiffs have not made a compelling case, if any, for the interest of this district or California over this case. Reviewing the evidence and arguments, the Court finds that this is not a "localized controversy" that this district or the state of California has an acute interest in having decided here. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1167 (S.D. Cal. 2005). In fact, considering "the minimal contacts this jurisdiction has with this controversy, it would place an unnecessary burden on jurors in this district to hear this action. *See id.* Accordingly, the Court finds that this factor weighs in favor of transfer.

**2. Plaintiffs' Choice of Forum**

Next, "[a]lthough great weight is generally accorded plaintiff's choice of forum," "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *see, e.g.*, *Carolina Cas. Co.*, 158 F. Supp. 2d at 1048 ("[T]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint.").

///

TIG argues that Plaintiffs' choice of forum is owed little deference because neither Plaintiff "is a California resident and California's relationship to the dispute between the parties is, at most, minimal." (Doc. No. 14 at 14–16.) Additionally, TIG notes it is in run-off and has no employees in California. (*Id.* at 11.) In opposition, Plaintiffs assert their choice of forum should be "given priority" because TIG is incorporated in California, the legal significance of which is not diminished by TIG being in run-off, and thus TIG cannot argue that litigating in its state of incorporation is "inconvenient." (Doc. No. 18 at 12–14.)

Plaintiffs' arguments demonstrate that this district has personal jurisdiction over TIG; however, Plaintiffs proffer no argument targeting this district in particular over any other of the districts in California. In contrast, TIG proffers evidence that none of the Underlying Claims currently pending are in this district. (*See* Doc. No. 14-10, Declaration of Rickey Glover, ¶ 8.) Considering that neither Plaintiff resides in this district—or California more generally—and there is no significant connection to the implicated policies, the Court's deference to Plaintiffs' chosen venue is "substantially reduced." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1100 (N.D. Cal. 2006); *see also Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1191 (S.D. Cal. 2007) ("Applied to these facts, plaintiff's choice of forum receives less deference because California is not plaintiff's domicile."). Accordingly, awarding Plaintiffs' choice of forum only some deference, the Court finds this factor weighs minimally against transfer. *See, e.g.*, *Morneau v. Protective Life Ins. Co.*, No. 22-CV-05004-RS, 2022 WL 17178300, at *2 (N.D. Cal. Nov. 23, 2022) ("Where none of the parties reside in the forum, and the subject matter of the litigation is not otherwise connected to the forum, however, plaintiff's choice of forum is entitled to little, if any, deference."); *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 528 (1947) ("Place of corporate domicile in such circumstances might be entitled to little consideration under the doctrine of forum non conveniens, which resists formalization and looks to the realities that make for doing justice.").

///

### 3. Convenience of the Parties

Next, the Court turns to compare the relative convenience of each forum to the parties. Neither Plaintiff is a California resident. Rather, American Home is organized under the laws of New York with its principal place of business located in New York. (Compl. ¶ 5.) Continental is organized under the laws of Pennsylvania with its principal place of business located in Illinois. (*Id.* ¶ 6.) Although TIG is incorporated in California, its principal place of business is located in New Hampshire. (*Id.* ¶ 7.)

From a purely geographic perspective, the Northern District of Ohio is more convenient to the parties themselves than this district. *See Carolina Cas. Co.*, 158 F. Supp. 2d at 1048–49. Although inconvenience cannot be eliminated for business entities where multiple states are implicated by each, the fact that all relevant states are geographically clustered except for California demonstrates that transferring venue would not simply shift the burden or inconvenience of litigation from the movant to the non-moving parties but rather reduce inconvenience to all. *See, e.g.*, *Rubio*, 181 F. Supp. 3d at 762. Accordingly, the Court finds this factor weighs in favor of transfer.

### 4. Convenience of the Witnesses and Costs of Litigation

"The convenience of witnesses is often the most important factor in determining whether a § 1404 transfer is appropriate." *Rubio*, 181 F. Supp. 3d at 762. "To demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." *Carolina Cas. Co.*, 158 F. Supp. 2d at 1049; *see also Northrim Bank v. Pearl Bay Seafoods, LLC*, 717 F. Supp. 3d 1026, 1035 (W.D. Wash. 2024) ("The costs of litigation generally focus on the forum's relative proximity to witnesses."). "In deciding whether to transfer, the Court must be careful to avoid a transfer that would merely shift [the burden between parties] rather than eliminate the inconvenience of costs." *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011) (citation and internal quotation omitted).

TIG identifies six witnesses—two party witnesses and four non-party witnesses—and details their materiality, expected testimony, and distance from both San Diego and

Cleveland, with supporting declarations. (Doc. No. 14 at 17–19.) In opposition, Plaintiffs assert that transfer would materially inconvenience their primary witness who is located in California and notes that "TIG does not assert that its witnesses would be unable to travel to California to participate in the defense of the suit here." (Doc. No. 18 at 15–16.) TIG responds that the only witness identified by Plaintiffs is a party witness who herself resides "apparently several hundred miles from San Diego[.]" (Doc. No. 20 at 11.) Moreover, TIG notes that Plaintiffs have "unspecified 'other witnesses' thousands of miles away in 'Illinois and Massachusetts,'" so "Plaintiffs are attempting to shift the inconvenience among *their own witnesses*[.]" (*Id.* (emphasis in original).)

The Court finds that TIG has sufficiently demonstrated that the convenience of the witnesses weighs in favor of transfer. Compared to TIG's six witnesses who all "live[] more than 1,000 miles closer to Cleveland than they do to San Diego" (*id.* at 10), Plaintiffs have only identified one witness who will be inconvenienced by the transfer. The impact to one party witness is outweighed by the impact to four non-party witnesses and two party witnesses. *See Aspen Ins. UK Ltd. v. Brown & Brown, Inc.*, No. CV1007892MMMJCGX, 2011 WL 13217776, at *8 (C.D. Cal. May 2, 2011) ("The court accords less weight to the inconvenience of party witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is litigated.") (collecting cases). Relatedly, the significantly reduced distance of the witnesses to the Northern District of Ohio would likely reduce the costs of litigation. *See Northrim Bank*, 717 F. Supp. 3d at 1035.

The Court notes that, based on Plaintiffs' representations that "other witnesses are located in Illinois and Massachusetts" (Doc. No. 18 at 11), a transfer would be more convenient for Plaintiffs' witnesses and thus likely reduce their own litigation costs as well. This is not a situation where transfer is shifting the inconvenience from TIG to Plaintiffs. For all these reasons, this factor weighs heavily in favor of transfer.[2]

---

[2] Because analysis of witnesses' convenience and litigation costs are intertwined, the Court considers the factors to be weighted as one, thus avoiding giving undue weight to the underlying rationale.

**5. Availability of Compulsory Process**

A court's subpoena power extends "(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1).

TIG notes that none of its third-party witnesses would be subject to compulsory process in this district. (Doc. No. 14 at 17.) However, Plaintiffs note that the transfer does not solve any compulsory-process issue because the identified witnesses reside in New Hampshire, Massachusetts, and Georgia—all of which are beyond the Northern District of Ohio's 100-mile trail subpoena range. (Doc. No. 18 at 15.)

Because neither forum would have compulsory process power over any of the third-party witnesses identified, this factor is neutral.

**6. Ease of Access to Sources of Proof**

"In the typical inquiry under this prong, courts look at the location of records and documents." *Costco Wholesale Corp.*, 472 F. Supp. 2d at 1195 (citation omitted). However, "this factor is not a predominate concern in deciding venue as advances in technology have made it easy for documents to be transferred to different locations." *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1216 (S.D. Cal. 2013) (citation omitted). "If a motion to transfer venue is based on the location of evidence, the defendant must show with particularity the location, difficulty of transportation, and the importance of such records." *Rubio*, 181 F. Supp. 3d at 764 (cleaned up).

TIG acknowledges that, in light of current technology, the ease of access is a less significant factor. (Doc. No. 14 at 20.) Regardless, TIG argues that, "to the extent that access to historical claims or insurance documentation becomes germane to this dispute, that documentation is maintained in New Hampshire and Pennsylvania." (*Id.*) In opposition, Plaintiffs assert that access to evidence does not warrant transfer because TIG admits the records are not located in Ohio and because Plaintiffs have been asked to fully

reimburse the costs of defense of all 67 Underlying Claims that are pending in California. (Doc. No. 18 at 16–17.)

TIG does not explain how the Northern District of Ohio would facilitate production of legacy documents in New Hampshire and Pennsylvania. Moreover, TIG's argument is based on the possibility that such legacy documentation may *become* germane, which implies that the importance of such documentation has yet to be ascertained. Accordingly, the only documentation identified with certainty is electronically stored and accessible, including documentation regarding the Underlying Claims pending in California referenced by Plaintiffs. As such, this factor is neutral. *See Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) ("In the age of electronically stored information, the ease of access to evidence is neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain in any district.").

**7. Feasibility of Consolidation with Other Claims**

Another "important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum." *In re Ferrero Litig.*, 768 F. Supp. 2d at 1081. In part this is because "centralizing the adjudication of similar cases will also avoid the possibility of inconsistent judgments." *Id.*

Plaintiffs argue that the transfer would not result in consolidation with 2024 Ohio Coverage Action. (Doc. No. 18 at 17–18.) In reply, TIG concedes that "this proceeding would not formally be consolidated with the Ohio state court coverage litigation" but argues that "transfer would promote efficiency" regardless. (Doc. No. 20 at 12 n.7.) Of note, TIG relegates this argument to a footnote without further explanation beyond a citation to an out of circuit district case.

Because TIG does not argue consolidation in the instant motion, the Court finds this factor is neutral.

**8. Judicial Congestion**

Finally, a court may consider "whether a trial may be speedier in another court because of its less crowded docket" as a public interest factor when determining a motion

for transfer of venue. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984). However, "[d]ocket conditions, although relevant, are a minor consideration when all other reasonable and logical factors would result in a transfer of venue." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 520 (E.D. Va. 1999).

TIG argues that "[w]hile the median times of disposition and to trial are comparable in each district, the 638 weighted filings per judge (21st in the country) in the Southern District of California constitutes a 'judicial emergency,' while the 357 weighted filings per judge (74th in the country) in the Northern District of Ohio does not." (Doc. No. 14 at 24.) However, TIG's argument runs contrary to Ninth Circuit law by focusing on comparative case load rather than time to trial. *See Gates Learjet Corp.*, 743 F.2d at 1337 ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.").

As TIG concedes, the median time to trial between the two districts is comparable and, thus, this factor is neutral.

**9. Balancing the Factors**

Convenience of the witnesses, convenience of the parties, familiarity with the state law, local interest, and cost of litigation all weigh in favor of transfer, while Plaintiffs' choice of forum weighs minimally against transfer. The rest of the factors are neutral. Considering that the most significant factor—witness convenience—among many others weigh in favor of transfer, the Court finds that those factors outweigh the little deference the Court gives Plaintiffs' preferred forum. Accordingly, TIG has met its burden to demonstrate that a transfer to the Northern District of Ohio would be for the convenience of parties and witnesses and in the interest of justice.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** TIG's motion to transfer and **TRANSFERS** the instant action to the Northern District of Ohio. In light of the transfer, the Court defers judgment on Plaintiffs' motion to enjoin TIG's later-filed action to the transferee court, especially considering Plaintiffs have filed a similar motion in the later-filed declaratory

judgment action based on the same underlying insurance issues initiated in that district by TIG.

**IT IS SO ORDERED.**

Dated: August 31, 2026

Hon. Anthony J. Battaglia
United States District Judge